JUDGE SWAIN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X

X Legacy, LLC,

                      Plaintiff,

           -against-

Third World Press Inc.,

                    Defendant.

-------------------------------------------------------X

**13 CV 7984**

Case No: _____

RECEIVED
NOV 0 8 2013
U.S.D.C. S.D. N.Y.
CASHIERS

---

### MEMORANDUM OF LAW OF PLAINTIFF X LEGACY, LLC IN SUPPORT OF ITS APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND MOTION FOR A PRELIMINARY INJUNCTION

---

Meister Seelig & Fein LLP
L. Londell McMillan, Esq.
Adam B. Oppenheim, Esq.
Two Grand Central Tower
140 East 45th Street, 19th Floor
New York, New York 10017
(212) 655-3500

*Attorneys for Plaintiff*
*X Legacy, LLC*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................... 1

BACKGROUND ...................................................................................................... 2

ARGUMENT ........................................................................................................... 5

I.     THIS COURT SHOULD PRELIMINARILY ENJOIN TWP FROM
CONTINUING TO DISTRIBUTE THE BOOK.................................................. 5

    A.  Applicable Standard For Issuing Preliminary Injunctive Relief............................ 5

    B.  X Legacy Is Likely To Succeed On The Merits ................................................... 7

       1. X Legacy Can Establish All The Elements of A Copyright Claim ................... 7

       2. TWP's Use Is Not a Fair Use ......................................................................... 8

          a.  TWP's Use of the Diary is Non-Transformative, Commercial Use ........ 9

          b.  TWP Excerpted the Creative Expression From An
Unpublished Work .................................................................................. 11

          c.  TWP Used a Substantial Portion of the Diaries
Without Consent .................................................................................... 12

          d.  TWP's Unauthorized Publication Of The Diaries Has Had,
And With Continue to Have, a Significant Negative Impact
On the Market For The Diaries .............................................................. 13

    C.  X Legacy Is Likely To Suffer Irreparable Harm If An Injunction
Is Not Issued ................................................................................................... 14

    D.  The Public Interest Would Not Be Disserved By The
Granting Of An Injunction................................................................................. 16

CONCLUSION......................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

Page(s)

Blanch v. Koons,
    467 F.3d 244 (2d Cir. 2006).................................................................................. 9

Campbell v. Acuff-Rose Music, Inc.,
    510 U.S. 569 (1994)............................................................................................. 9

eBay, Inc. v. MercExchange,
    547 U.S. 388 (2006)........................................................................................... 15

Edgerton v. UPI Holdings, Inc.,
    No. CCB-09-1825, 2010 WL 2651304 (D. Md. 2010)................................. 7

Gund Inc. v. SKM Enter., Inc.,
    No. 01 CIV 0882 (CSH), 2001 WL 125366 (S.D.N.Y. Feb. 14, 2001) ..................................... 6

Harper & Row Publishers, Inc. v. Nation Enterprises,
    471 U.S. 539 (1985)................................................................................... passim

Hojheinz v. Discovery Communications, Inc.,
    No. 00 CIV. 3802(HB), 2001 WL 1111970 (S.D.N.Y Sept. 30,2001)..................................... 11

Infinity Broad. Corp. v. Kirkwood,
    150 F.3d 104 (2d Cir. 1998)............................................................................... 9

Jorgensen v. Epic/Sony Records,
    351 F.3d 46 (2d Cir. 2003).................................................................................. 8

Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.,
    312 F.3d 94 (2d Cir. 2002).................................................................................. 6

Nature's Enters., Inc. v. Pearson,
    No. 08 Civ. 8549 (JGK), 2008 WL 4700547 (S.D.N.Y. Oct. 24, 2008) ................................... 6

New Era Publications Int'l v. Carol Publishing Group,
    904 F.2d 152 (2d Cir.),....................................................................................... 8

Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.,
    602 F.3d 57 (2d Cir. 2010)................................................................................. 7

Salinger v. Colting,
    607 F.3d 68 (2d Cir. 2010)................................................................. 14, 15, 16

Sarl Louis Feraud Int'l v. Viewfinder, Inc.,
    489 F. 3d 474 (2d Cir. 2007).............................................................................. 9

Somoza v. New York City Dept. of Educ.,
   No. 06 Civ. 5025 (VM), 2006 WL 1981758 (S.D.N.Y. July 10, 2006) ................................... 6

United States v. Am. Soc. of Composers, Authors and,
   Pubs., 599 F. Supp. 2d 415 (S.D.N.Y. 2009) .......................................................... 10

Warner Bros. Inc. v. Dae Rim Trading, Inc.,
   877 F.2d 1120 (2d. Cir. 1989) ..................................................................... 6

**Statutes**

17 U.S.C. § 107 ................................................................................. 9, 14

17 U.S.C. § 411 ..................................................................................... 7

17 U.S.C. § 502(a) .................................................................................. 6

**Rules**

Fed. R. Civ. P. 65(b) ............................................................................... 6

Fed. R. Civ. P. Rule 65(a) ...................................................................... 1, 5, 14

Plaintiff X Legacy, LLC ("X Legacy" or "Plaintiff"), by its undersigned attorneys, hereby submits this memorandum of law in support of its motion pursuant to Fed. R. Civ. P. Rule 65(a) for a preliminary injunction and for a temporary restraining order pending a hearing on such motion, to enjoin defendant Third World Press Inc. ("TWP") from copying, distributing, publishing, or otherwise transmitting unpublished pages from the personal diaries of El Hajj Malik El-Shabazz (a/k/a "Malcolm X").

## PRELIMINARY STATEMENT

This emergency relief sought here is necessitated by TWP's refusal to acknowledge that it is about to publish and widely distribute Plaintiff's most prized possession without legal authority in a book entitled "The Malcolm X Diaries" (the "Unauthorized Book"). Plaintiff X Legacy LLC is an entity created by the heirs of Malcolm X to protect the assets and properties of the beneficiaries of Dr. Betty Shabazz and Malcolm X. Among the most important of that property, are the as-yet-unpublished diaries of Malcolm X. For many years, X Legacy has taken steps to carefully plan the release of those diaries in 2015 at the time of the 50th anniversary of the assassination of Malcolm X. Malcolm X's daughters assigned their rights in the diaries—and of all of the property of the estate—to X Legacy so that the release of the diaries could be undertaken, collectively, by Malcolm X's family.

Despite being put on notice—repeatedly—Defendant TWP has ignored X Legacy's pleas to stop publication, and is racing to profit from the publication of materials to which it possesses no rights. X Legacy has repeatedly communicated to TWP that it does not have permission to publish the diaries of Malcolm X, which are the property of X Legacy. The unauthorized and premature publication of these works, in blatant violation of X Legacy's exclusive copyright rights, would greatly diminish the value and impact these works would on the world have if

properly published by X Legacy as planned on the anniversary of Malcolm X's assassination. Because publication of advance copies has already begun, and because widespread global dissemination is imminent, X Legacy has been forced to seek this Court's assistance in provide emergency relief to protect the unauthorized use of its property.

## BACKGROUND

Plaintiff X Legacy is a limited liability company organized under the laws of the State of New York, and was created to protect, consolidate, and enhance the value of the assets and properties relating to the beneficiaries of Dr. Betty Shabazz and El Hajj Malik El-Shabazz, including, without limitation, the family's collection of Malcolm's diaries (herein, the "Diaries"), letters, writings, photographs, personal effects, and other materials.

Defendant TWP is a company organized under the laws of the State of Illinois with a place of business at 7822 S. Dobson Avenue, Chicago, Illinois 60619. TWP is in the business of publishing and distributing literature largely from authors, scholars, and those writing on the African American experience and the African diaspora.

Malcolm X, as this Court is surely aware, was an African-American Muslim minister and a human rights activist in the 1960s. He was America's most visible proponent of Black Nationalism in America and abroad. His life journey reveals a captivating transformation from Malcolm Little to Detroit Red to Malcolm X, and then finally, to El-Hajj Malik El-Shabazz. Malcolm X has been described as one of the greatest, most influential, most feared, and most misunderstood African-Americans in history. To many, Malcolm X is credited with raising the self-esteem of Black Americans, reconnecting them with their African heritage, and advocating against racial injustice and inequality.

For many years, Malcolm X was the national spokesman and a leader for the Nation of Islam.  In 1964, Malcolm X separated from the Nation of Islam and then embraced Sunni Islam. After a substantial period of travel in Africa and the Middle East, he returned to the United States.

On February 21, 1965, Malcolm X was assassinated.  Much can be said—and has been said—about Malcolm X.  His autobiography, "The Autobiography of Malcolm X" as told to author Alex Haley is one of the biggest selling autobiographies ever sold, and is a classic text in many colleges and universities.  In 1998, Time Magazine named *The Autobiography of Malcolm X* one of the ten most influential books of the 20th century.

The Diaries reflect Malcolm X's personal thoughts, observations, reflections and plans during a significant period of his life. Unlike other literary works, even the "Autobiography of Malcolm X", these historical entries are solely his words and writings. The Diaries, under the right circumstances, shall become very important literary works with great scholarship and commercial success.  However, in the event these works are not arranged with adequate promotion, marketing, and distribution, the release of the Diaries will suffer and consequently cause irreparable harm to the heirs of the family, and loss of great opportunity for the academic and literary world at large.

While TWP and its owner Dr. Haki Madhibiuti are respected and has offered great African-American literary works, TWP has suffered from lack of resources and it is not in a position to optimize the value of the Diaries. Even TWP admits that TWP does not have the proper means and resources to find this important work. He notes on indiegogo.com, where TWP states that "We need your help because a book of this importance needs to be supported with an appropriate campaign of public relations and marketing. These costs far exceed our resources.

Even the costs incurred to date, and the costs of initial printing, are beyond our financial capacity without your help." Clearly, the Diaries should not be distributed under these conditions and without the consent of X Legacy, as it would adversely impact the work and goals of the family heirs and X Legacy, the rightful owners of the Diaries.

On or about October 10, 2013, TWP published a copy of the Unauthorized Book emblazoned with the label "Advance Uncorrected Copy." The Unauthorized Book contains nearly 250 pages of the Diaries along with photographs, personal papers, and commentary.

On October 23, 2013, X Legacy's attorney, Mr. L. Londell McMillan wrote to TWP demanding that they cease and desist from publishing the Unauthorized Book, and remove any references to the Unauthorized Book from its website. (McMillan Decl., Ex. I).[1] To date, TWP has not responded to these requests.

On October 26 and 29, 2013, Attallah Shabazz and Qubilah Shabazz placed telephone calls to the Defendant to request that Defendant refrain from publishing the Unauthorized Book because X Legacy had not given permission for it to do so.

Between October 23 and November 4, X Legacy's legal representatives made numerous attempts to communicate with TWP by telephone and by email, in efforts to learn TWP's response to X Legacy's claims of infringement. (McMillan Decl., Exs. J, K, L, M, N and O). Although TWP initially promised that a response would be forthcoming, none was ever received, and TWP has not taken any steps to remove references to the Unauthorized Book from its website. (McMillan Decl., Exs. A and B). X Legacy has been left to conclude that TWP intends to continue its infringement of X Legacy's property, and to publish and distribute the Unauthorized Book.

---

[1] This and other such references are to the accompanying declaration of L. Londell McMillan dated November 8, 2013.

X Legacy was shocked to discover that it's most prized possession was about to be published by an unauthorized party: Defendant TWP. To protect its property, X Legacy raced to file a registration claim for the diaries of Malcolm X with the United States Copyright Office on November 6, 2013. (McMillan Decl., Ex. P). That registration claim was assigned number 1-1017659711 by the United States Copyright Office. (McMillan Decl., Ex. P). On November 7, 2013, X Legacy filed an application for preregistration of its unpublished literary work currently entitled *The Diaries of Malcolm X* (which will incorporate, and be derivative of, the Diaries) with the U.S. Copyright Office. A Confirmation receipt from the U.S. Copyright Office for the preregistration application was received on that same day. (McMillan Decl., Ex. Q).

Finally, on November 8, 2013, X Legacy filed the accompanying complaint (the "Complaint") against TWP asserting a single cause of action for copyright infringement based on TWP's unauthorized copying, distribution, display and exploitation of the Diaries and/or portions thereof.

## ARGUMENT

## I. THIS COURT SHOULD PRELIMINARILY ENJOIN TWP FROM CONTINUING TO DISTRIBUTE THE BOOK

Without an injunction, TWP will continue to violate X Legacy's copyright and usurp X Legacy's right to control when and how the Diaries are published. This will immediately and irreparably damage not only X Legacy's valuable property, but also forever impact the legacy of Malcolm X. For this reason, this Court should enjoin TWP from continuing to publish the Unauthorized Book.

### A.   Applicable Standard For Issuing Preliminary Injunctive Relief

In the Second Circuit, a court may issue a preliminary injunction in a copyright action pursuant to Fed. R. Civ. P. 65(a) if the plaintiff demonstrates: (1) "either (a) a likelihood of

success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor; (2) "that he is likely to suffer irreparable injury in the absence of an injunction"; (3) that "the balance of hardships tips in the plaintiff's favor; and (4) that the "public interest would not be disserved" by the issuance of a preliminary injunction. *Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010) (internal citation and quotations omitted).  *See also Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 312 F.3d 94, 96, 100 (2d Cir. 2002) (affirming preliminary injunction in copyright action); *Nature's Enters., Inc. v. Pearson*, No. 08 Civ. 8549 (JGK), 2008 WL 4700547, at * 3 (S.D.N.Y. Oct. 24, 2008) (granting preliminary injunction in copyright action); *Gund Inc. v. SKM Enter., Inc.*, No. 01 CIV 0882 (CSH), 2001 WL 125366, at *1-2 (S.D.N.Y. Feb. 14, 2001) (noting prior grant of temporary restraining order and granting preliminary injunction).

Pursuant to Fed. R. Civ. P. 65(b), "[t]he purpose of a temporary restraining order is to preserve an existing situation in *status quo* until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction." *Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1125 (2d. Cir. 1989) (internal citation and quotation omitted).  A temporary restraining order may be granted pending a hearing on the preliminary injunction if the movant faces immediate and irreparable injury or damage. *Somoza v. New York City Dept. of Educ.*, No. 06 Civ. 5025 (VM), 2006 WL 1981758, *7 (S.D.N.Y. July 10, 2006).

Further, pursuant to the Copyright Act itself, a court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a).  Under this standard, X Legacy's application should be granted.

B.    X Legacy Is Likely To Succeed On The Merits

TWP's substantial and complete copying of the unpublished Diaries, without proper legal authorization from X Legacy, is not protected fair use. Rather, it is plain and simple copyright infringement. For such reason, X Legacy is likely to succeed on the merits of its copyright claim.

1.    X Legacy Can Establish All The Elements of A Copyright Claim

To prevail on a copyright claim, "a plaintiff with a valid copyright must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectable elements of plaintiff's." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010) (internal citation omitted). Here, there is no doubt that X Legacy will be able to establish these elements.

First, X Legacy is an active legal entity owned by the daughters of Malcolm X. It has filed a valid pre-registration in the Diaries, which, pursuant to 17 U.S.C. § 411, is sufficient for the institution of a copyright action. (McMillan Decl., Ex. Q). *See, e.g. Edgerton v. UPI Holdings, Inc.*, No. CCB-09-1825, 2010 WL 2651304, at *5 n.7 (D. Md. 2010) ("Section 411(a) also permits infringement suits upon the preregistration of a copyright claim"). In addition, X Legacy owns the exclusive rights to publish, reproduce and distribute the Diaries in all languages throughout the world, including the right to publish it electronically, as those rights were assigned to X Legacy by the heirs of Malcolm X. (McMillan Decl., Exs. C, D, E, F, and G).

There is no doubt that TWP "actually copied" the Diaries. To show actual copying, a plaintiff may either bring forward direct evidence of copying or show that the defendant had access to plaintiff's work and "that there are similarities between the two works that are

probative of copying." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003) (internal quotations omitted). In the alternative, "where the works in question are so strikingly similar as to preclude the possibility of independent creation, copying may be proved without a showing of access." *Id.* 56 (internal quotations omitted). TWP itself admits that it actually will publish the Diaries: on its website, TWP proclaims that "In just a few months, the world will see, The Diary of Malcolm X, printed contents of his private diary from the year 1964. (McMillan Decl., Ex. B). Indeed, its infringement has already begun: TWP is distributing the Unauthorized Book emblazoned with the phrase "Advance Uncorrected Copy" on its cover of the Unauthorized Book incorporating the Diaries. (McMillan Decl., Ex. H).

TWP's copying of the Unauthorized Book is illegal because it is an exact reproduction of the Diaries published with as well private photographs of Malcolm X, which are also property of X Legacy. For these reasons, TWP has infringed the copyright in the Diaries, ensuring X Legacy's success on the merits of its claim.

    2.    <u>TWP's Use Is Not a Fair Use</u>

TWP's exact copying of the unpublished Diaries cannot qualify as a fair use. Section 107 of the Copyright Act codifies the defense of fair use. Under the statute, limited portions of copyrighted works may be reproduced only to the extent necessary "for purposes such as criticism, comment, news reporting, teaching . . . scholarship, or research." Whether a use of particular copyrights materials is considered "fair" is a mixed question of fact and law that may be resolved by the Court as a matter of law. *New Era Publications Int'l v. Carol Publishing Group*, 904 F.2d 152, 155 (2d Cir.), *cert denied*, 498 U.S. 921 (1990) (*quoting Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 549 (1985). The factors that must be considered in determining whether the use of a work is a fair use are:

(1) the purpose and character of the use, including whether such use is of a
commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyright
work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted
work.

17 U.S.C. § 107; *see also Sarl Louis Feraud Int'l v. Viewfinder, Inc.*, 489 F. 3d 474, 482 (2d Cir.
2007). "Since fair use is an affirmative defense to a claim of infringement, the burden of proof is
on its proponent." *Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 107 (2d Cir. 1998). As
discussed in greater detail below, TWP will not be able to carry its burden of demonstrating that
any of the four factors weight in favor of a finding of fair use.

   a.      *TWP's Use of the Diary is Non-Transformative, Commercial Use*

   The first fair use factor, the purpose and character of the use, clearly weighs against a
finding of fair use because TWP's use of the Book is neither transformative nor commercial. As
a preliminary matter, there is no question that TWP's use of the Book is not transformative. The
United States Supreme Court has held that, in assessing the first fair use factor, a court must look
to "whether the new work merely supersedes the objects of the original creation or instead adds
something new, with a further purpose or different character, altering the first with new
expression, meaning, or message; it asks, in other words, whether and to what extent the new
work is transformative." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 570, 579 (1994). As
a result, the Second Circuit has "declined to find a transformative use when the defendant has
done no more than find a new way to exploit the creative virtues of the original work." *Blanch v.*

*Koons,* 467 F.3d 244, 251-252 (2d Cir. 2006). *See also U.S. v. American Soc. of Composers,*

*Authors and Pubs.*, 599 F. Supp. 2d 415, 424 (S.D.N.Y. 2009) ("Applicant's use of previews is

not transformative. It is undisputed that the music segments used in applicant's previews are

exact copies of ASCAP music.") Here, TWP's unauthorized publication of the Book is no way

transformative of the Diaries. Instead, TWP just republished exact images of the actual pages

from Diaries with annotations and commentaries from Herb Boyd and Ilyasah Shabazz.

(McMillan Decl., Ex. H).

TWP's annotations and commentary do not change the meaning or message of the

Diaries and work. TWP is merely using the Diary, which is the property of X Legacy,

unlawfully to release the Unauthorized Book.

The Supreme Court's decision in *Harper & Row, Publishers, Inc. v. Nation Enterprises* is

instructive. In that case, Defendant had published unauthorized excerpts of President Gerald

Ford's memoirs two to three weeks before Plaintiff, who was the holder of the exclusive right to

print prepublication excerpts from the memoirs. The Supreme Court, in holding that

Defendant's publication was not fair use, stated, "*The Nation* went beyond simply reporting

uncopyrightable information and actively sought to exploit the headline value of its

infringement." *Harper & Row,* 471 U.S. at 561 (internal marks and citations omitted). The

Supreme Court further noted that the concept of fair use presupposes good faith and fair dealing,

and observed, correspondingly, that the Defendant had knowingly exploited a purloined

manuscript "[u]nlike the typical claim of fair use, *The Nation* cannot offer up even the fiction of

consent as justification." *Id.* at 562 (internal marks and citations omitted). TWP has similarly

exploited a purloined or leaked copy of the Book.

Further, as this Court has held, the use of a copyrighted work to attract viewers to a website containing advertisements for which the secondary user is compensated amounts to a commercial use that weighs against a finding of fair use. *United States.* v. *Am. Society of Composers, Authors and Publishers,* 599 F. Supp. 2d 415, 429 (S.D.N.Y. 2009). Here, TWP's use of the Unauthorized Book is clearly commercial, as the item displayed on its website is intended to as posted shall be sold commercially and provides links to fundraising campaign which TWP has commenced to support its publication of Unauthorized Book. (McMillan Decl., Exs. A and B). The first factor, therefore, weighs against a finding of fair use.

    b.    *TWP Excerpted the Creative Expression From An Unpublished Work*

The second fair use factor, the nature of the copyrighted work, also weighs against a finding of fair use because TWP knowingly copied an *unpublished* creative work. In assessing the nature of the copyrighted work, courts look to whether the infringed work was published or unpublished and whether the work was creative or factual. As a general rule, published works enjoy less fair use protection than unpublished works. *Hojheinz v. Discovery Communications, Inc.*, No. 00 CIV. 3802(HB), 2001 WL 1111970, at *5 (S.D.N.Y Sept. 30,2001). As the Supreme Court held in *Harper & Row*, while even substantial quotations might qualify as fair use in a review of a published work the authors right to control the first public appearance of his expression weighs against such use of the work before its release. The right of first publication encompasses not only the choice whether to publish at all, but also the choices of when, where, and in what form first to publish a work. *Harper & Row* 471 U.S. at 564. In so ruling, the Supreme Court held that applying the second factor weighed against a finding of fair use because the copyright holders had a clear interest in keeping the manuscript confidential. In that case, Defendant's use afforded no such opportunity for creative or quality control. *Id.* The Supreme

Court therefore concluded that a use that so clearly infringes the copyright holder's interests in confidentiality and creative control is difficult to characterize as fair. *Id.*

TWPs use of the excerpts from the unpublished Diaries is indistinguishable from *The Nation's* use of President Ford's unpublished memoirs at issue in *Harper & Row*. For example, the Supreme Court noted that while some of the briefer quotes from the memoirs were arguably necessary to convey the facts, application of the second factor to *The Nation's* excerpts weighed against a finding of fair use because *The Nation* had excerpted the subjective descriptions and portraits of public figures whose power lies in the authors individualized expression. *Harper & Row,* 471 U.S. at 563. Similarly here, the Diaries are unpublished and TWP has usurped X Legacy's ability to control the manner in which the message in the Diaries is distributed.

     c.    *TWP Used a Substantial Portion of the Diaries Without Consent*

The third factor, the amount and substantiality of the portion used, also weighs against a finding of fair use because TWP used a substantial portion of the Diaries without consent. As the Supreme Court held in *Harper & Row*, a case which involved the taking of a mere 300 words from a full length book, "the fact that a substantial portion of the infringing work was copied verbatim [from the original work] is evidence of the qualitative value of the copied material, both to the originator and to the plagiarist who seeks to profit from marketing someone else's copyrighted expression." *Harper & Row,* 471 U.S. at 565. Thus, even though the words quoted in that case were an insubstantial portion of President Ford's memoirs, *The Nation's* inclusion of verbatim excerpts in its article was sufficient evidence for the Supreme Court to hold that the third factor weighed against a finding of fair use. *Id.* at 564-566.

Here, there can be no doubt that the Unauthorized Book includes the exact verbatim excerpts from the Diaries. In fact, the promotion of the Unauthorized Book admits this fact.

Indeed, the Unauthorized book contains very little else besides actual copies of the Diaries. (McMillan Decl., Ex. H). The third factor, therefore, weighs against a finding of fair use.

> d.   *TWP's Unauthorized Publication Of The Diaries Has Had, And Will Continue to Have, a Significant Negative Impact On the Market For The Diaries*

Finally, the fourth factor, the effect on the potential market for or value of the copyrighted work, weighs against a finding of fair use because TWPs unauthorized publication of the Diaries will have a significant negative impact on the lack of funding, promotion, marketing and the Diaries potential market. In concluding that the fourth factor weighed against a finding of fair use, the Supreme Court in *Harper & Row* held that the borrowing of these verbatim quotes from the unpublished manuscript directly competed for a share of the market for prepublication excerpts. *Id.* The Supreme Court further held that protecting *The Nation's* actions under the fair use doctrine could seriously harm the market for copyrighted works:

> [A] fair use doctrine that permits extensive prepublication quotations from an unreleased manuscript without the copyright owners consent poses substantial potential for damage to the marketability of first serialization rights in general. Isolated instances of minor infringements, when multiplied many times, become in the aggregate a major inroad on copyright that must be prevented.

*Id.* at 569 (internal marks and citations omitted).

Here again, the situation in *Harper & Row* is almost indistinguishable from the one in this case. TWP has taken extensive prepublication quotations from an unreleased work without the copyright owners consent. As the Supreme Court recognized, this will inevitably have an effect on the potential market for the Diaries in future works. Once it is released, it is out. No future publisher will wish to make a deal for these very valuable writings and thoughts of Malcolm X at arguably his most difficult and trying times of his life. Also, other authors will likely rush to publish literary works inspired by and/or interpreting the Diaries which shall

prevent X Legacy from sending and timely disseminating other works relating to Malcolm X.  A buyer whose curiosity is satisfied by viewing the Unauthorized Book can decide that he or she need not buy the Diaries as a result of TWPs publication.  TWP's infringing conduct has prevented X Legacy from effectively executing its marketing plan for the release of literary works as well as business model to best deliver such works.

All four factors of the fair use analysis set forth in 17 U.S.C. § 107 weigh against a finding of fair use here.  For this reason, X Legacy is likely to succeed in its copyright infringement action.

C.      X Legacy Is Likely To Suffer Irreparable Harm If An Injunction Is Not Issued

Fed. R. Civ. Pro. 65(a) next requires X legacy to show: (a) that it will suffer irreparable injury absent an injunction and (b) that the "balance of the hardships" weights in their favor.  As the Second Circuit recently clarified these two elements, irreparable injury and a balancing of the hardships are very much related.  *Salinger,* 607 F.3d at 81.  As the Court explained, "[t]he relevant harm is the harm that (a) occurs to the parties' legal interests and (b) cannot be remedied after a final adjudication, whether by damages or a permanent injunction."  *Id.*  To that end, "[t]he plaintiff's interest is, principally, a property interest in the copyrighted material."  *Id.* Further, the Supreme Court has suggested, a copyright holder might also have a First Amendment interest in not speaking.  *Id.*  (citing *Harper & Row* 471 U.S. at 559).

X Legacy will face irreparable injury if an injunction is not issued and the balance of equities tips in X Legacy's favor.  As the Second Circuit explained in *Salinger:*

> [h]arm might be irremediable, or irreparable, for many reasons, including that a loss is difficult to replace or difficult to measure, or that it is a loss that one should not be expected to suffer and courts have tended to issue injunctions in this [copyright] context because to prove the loss of sales due to infringement is notoriously difficult.

*Salinger*, 607 F.3d at 81 (internal citations and quotations omitted).  As the Second Circuit

Explained in *Salinger*, a party's likelihood of success often establishes irreparable harm.  *Id.* at

82.  Indeed, the Circuit Court went on to note that [t]his long tradition of equity practice is not

surprising, given the difficulty of protecting a right to exclude through monetary remedies.  *Id.*

(quoting *eBay, Inc. v. MercExchange*, 547 U.S. 388, 395 (2006)).  That Court also noted that the

loss of First Amendment freedoms, and hence infringement of the right not to speak, for even

minimal periods of time, unquestionably constitutes irreparable injury.  *Id.* (internal citation

omitted).

     The Holdings of *Salinger* and in *Harper & Row* establish that X Legacy will likely be

irreparably harmed in the absence of an injunction.  Specifically, X Legacy's right to not speak,

or not distribute and control the marketing and roll-out for the Diaries, is irreparably damaged

every moment that the Unauthorized Diaries are available for purchase by TWP.  Here, as in

*Harper & Row*, TWP has effectively arrogated to itself the right of first publication, an important

marketable subsidiary right.  *Harper & Row*, 471 U.S. at 549.  "From the beginning, those

entrusted with the task of revision [of the Copyright Act] recognized the overbalancing reasons

to preserve the common law protection of undisseminated works until the author or his successor

chooses to disclose them."  *Id.* at 553 (internal citation and quotation omitted).  Accordingly, in

publishing portions of the Diaries, TWP unlawfully usurped the benefits of first publication that

lawfully belong to X Legacy and the heirs of Malcolm X. This irreparably damages X Legacy's

ability to control the manner in which Malcolm X's most personal Diaries are distributed.

Further, as the Second Circuit warned in *Salinger,* these harms cannot be compensated in

monetary damages.

In addition to the first publication right, TWPs unauthorized publication of the Diaries harms X Legacy in other ways and will continue to do so.  On the most basic level, it damages the marketability of the diaries because the Advance Copies provides the book-buying public with a free copy of several important passages in the Diaries.  This can undercut the public's incentive to buy the Diaries since numerous people have it already. Second, TWP has preemptively decided what framework and plan to focus the release of the Diaries with public press releases.  As such, TWP has usurped X Legacys right to tell the Diaries story as it chooses.

Because, TWP has provided minimal, if any, original content, its rights to free expression are greatly diminished. This is not a case where TWP invested substantial time and resources in creating a new work.  Rather, this is a publication of pre-existing unpublished works. As such, X Legacy will be irreparably harmed by the continued publication by TWP of the Book and the balance of equities tips decidedly in X Legacy's favor.

D.      <u>The Public Interest Would Not Be Disserved By The Granting Of An Injunction</u>

Finally, the public interest would not be disserved if this Court grants a preliminary injunction. In considering this final factor, the *Salinger* court remarked that the object of copyright law is to promote the store of knowledge available to the public.  But to the extent it accomplishes this end by providing individuals a financial incentive to contribute to the store of knowledge, the public's interest may well be already accounted for by the plaintiffs interest. *Salinger*, 607 F.3d at 82.  The Court noted that every injunction issued before a final adjudication on the merits risks enjoining speech protected by the First Amendment.  "Some uses, however, will so patently infringe another's copyright, without giving rise to an even colorable fair use defense, that the likely First Amendment value in the use is virtually nonexistent." *Id.* at 82-83.

Here, TWP's unauthorized use of the Diaries lacks any legitimate fair use and violates X Legacy's exclusive rights in the Book. Thus, the public will in no way be disserved by enjoining TWP's planned publication. X Legacy must protect its right of first publication, and its other rights as an exclusive copyright licensee, rights expressly protected by the U.S. Supreme Court in *Harper & Row* and other cases. In sum, TWPs willful and self-satisfied copying of the Diaries is not protected as fair use and the public has no interest in allowing unlawful infringement to continue unabated.

## CONCLUSION

For all of the foregoing reasons, plaintiff X Legacy LLC respectfully requests that this Court grant both its application for a temporary restraining order and for a preliminary injunction, and also grant such other and further relief, together with costs (including attorneys fees), as this Court deems appropriate.

Dated: November 8, 2013                    Respectfully submitted,

MEISTER SEELIG & FEIN LLP

By: *L. Londell McMillan*

L. Londell McMillan, Esq.
Adam B. Oppenheim, Esq.
Meister Seelig & Fein LLP
140 E. 45th Street
New York, NY 10017
Tel. (212) 655-3500
Fac. (646) -568-7164
Email: llm@msf-law.com

*Attorneys for Plaintiff*
*X Legacy. LLC*

5739-001 Doc. #54 v2

17