```
dbm2xlea
```
                                                                    1

 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2  ------------------------------x

 3  X LEGACY, LLC,

 4                Defendant,                 New York, N.Y.

 5            v.                             13 Civ. 7984(LTS)

 6  THIRD WORLD PRESS,

 7                Defendant.

 8  ------------------------------x

 9                                           November 22, 2013
                                             9:15 a.m.
10  Before:

11                  HON. LAURA TAYLOR SWAIN,

12                                           District Judge

13

14                          APPEARANCES

15

16  MEISTER, SEELIG & FEIN, LLP
         Attorneys for Plaintiff
17  BY:  ADAM B. OPPENHEIM
         L. LONDELL MC MILLAN
18

19  EMERY, CELL, BRINCKERHOFF & ABADY, LLP
         Attorneys for Defendant
20  BY:  MATTHEW D. BRINCKERHOFF

21

22

23

24

25

dbm2xlea

            THE COURT:  Counsel, we are here in the matter of an application for injunctive relief in X Legacy v. Third World Press.  I am Judge Swain.  Pardon my voice.

            Counsel, may I have your appearances, please?

            MR. McMILLAN:  L. Londell McMillan for X Legacy, plaintiff.

            THE COURT:  Good morning, Mr. McMillan.

            MR. OPPENHEIM:  Adam Oppenheim also here on behalf of X Legacy.

            THE COURT:  Good morning, Mr. Oppenheim.

            MR. BRINCKERHOFF:  Matthew Brinckerhoff of Emery, Celli, Brinckerhoff & Abady, as a representative of Third World Press, and one that we -- and in a manner where we believe we are about to be retained formally but have not yet been but have authority to speak on their behalf and certainly as a friend of the court.

            As we mentioned in our letter that we sent yesterday, we were just contacted two days ago by Mr. Madhubiti, the head of Third World Press in Chicago, and we were working out the details of being retained and opposing this motion for preliminary injunction.  And we had submitted in written form, and would certainly reiterate today, our application to adjourn the motion for a preliminary injunction, with our consent to continue the TRO, until that date as contemplated by the rule 65(b)(2), I believe, and to allow us an opportunity to complete

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1  our review and investigation of the facts and to also give us
2  an opportunity to be heard in a meaningful way by submitting
3  papers to the court and things of that nature.
4      I can also tell you, just because I think it is
5  important for the court to know, since no one has yet been in
6  the court to speak in any way on behalf of the defendant, Third
7  World Press, that Third World Press did enter into a publishing
8  contract with a person, one of the Shabazz daughters, Ilyasah,
9  who signed on behalf of X Legacy purporting to transfer the
10 rights of publication to Third World Press on March of this
11 year.
12     And there are substantial and important questions
13 about who has authority to act on X Legacy's behalf, whether or
14 not X Legacy has the copyright or the intellectual property
15 that is at issue in this case; whether or not Ms. Shabazz, on
16 behalf of her sisters and X Legacy -- I would be happy to
17 provide you with a copy of the agreement if you would like.  It
18 is a very important document -- had the apparent or actual
19 authority to enter into the agreement; whether or not X Legacy
20 even has the authority to be taking the actions it does today
21 and has in the past.  These are all significant and substantial
22 questions.
23     When we were first contacted, we called up
24 Mr. McMillan, who happens to also be an old classmate of one of
25 my partners and myself from law school, and made the proposal

1  that we thought was eminently reasonable, namely, that the TRO
2  would be extended; that it would provide us enough time to
3  adequately research and for us to represent our client or
4  putative client; that there would be no prejudice to X Legacy
5  because the preliminary injunction they seek is exactly
6  identical to the TRO that was entered *ex parte* on November 8.
7  That offer was declined, which is what brought us here today.

8  But I would renew the request that the TRO be
9  extended -- it is the full relief that they are seeking.  They
10 can make no claim of prejudice -- and then we be allowed to
11 complete our process and make sure that the court has a full
12 presentation from both sides on this matter and that due
13 process is followed.

14 I recognize that X Legacy has been frustrated and has
15 not been responded to in many ways.  There have been phone
16 conversations, as I understand it, at various times, and I know
17 that they were also frustrated in making sure that the TRO that
18 this court entered was abided by.  I have not yet had any
19 opportunity to investigate any of those particular facts that
20 were presented to us last night via e-mail and then filed in
21 court via ECF, but I am here to renew that application, to
22 hopefully persuade the court that there are significant issues
23 here.

24 I would be happy to hand up a copy of the contract.
25 But Third World believed that it was acting with full

1    authority.  It has a contract signed off on by one of Malcolm
2    X's daughters on behalf of X Legacy, the plaintiff in this
3    case.  It had no reason to believe that that person did not
4    have authority to enter into the contract that was consummated,
5    and the beneficiaries of that contract are each and every one
6    of the six Shabazz daughters, the Malcolm X daughters.
7              THE COURT:  Thank you, Mr. McMillan.
8              MR. McMILLAN:  I am going to defer to Adam for the
9    procedural aspects of it, which he presented to the court, and
10   I will chime in where appropriate if the judge will permit me
11   to do so.
12             THE COURT:  That's fine.  Why don't you all just have
13   a seat.  Thank you.
14             MR. McMILLAN:  You would like us to talk from our
15   seat?
16             THE COURT:  You can speak from your seat.
17             MR. OPPENHEIM:  Thank you, your Honor.
18             I want to address a few points just raised by counsel
19   in making his appearance.  Probably the most important one here
20   is that X Legacy is not party to the agreement that my
21   adversary has offered to hand up to the court.  X Legacy is
22   merely typed underneath the signature of Ilyasah Shabazz on
23   that.  It is not a party.  It didn't convey any rights under
24   that agreement.  And, as we explained to the court a few weeks
25   ago, X Legacy holds the copyright to these works.

Additionally, while I appreciate the difficult position that counsel is in here, having only recently begun the retaining process, in fact, the ownership of this copyright is something that Third World Press has been aware of for a great deal of time. Not only did we begin contacting them on October 23, when we first found out that they had plans to publish the works, we spoke to them numerous times before and after this court issued an order enjoining them from the publication of that work.

They not only ignored our calls and written communications, as suggested, they also ignored this court's order, despite finding out that they had been enjoined from the publication of the book, the book went up right after I was in this courtroom. The book was for sale. The book was on Amazon. The book was on barnesandnoble.com. And we really don't know where else it has been for sale. We know the publisher is located in Chicago. I would have to imagine there are a number of brick-and-mortar retailers also selling book. We have been ignored every time. It was only through the efforts of counsel for X Legacy that the book was removed from two major online retailers.

That's why it has been difficult for us to agree to suspend these proceedings this morning. There has been no indication, other than the recent almost retention of counsel, that Third World Press has any intention of stopping what they

1  are doing here.  We need this court's help in preventing this
2  book from being released.
3              THE COURT:  You have a TRO.  That's a court order.
4  You can move for contempt of that.  Obviously moving to the
5  preliminary injunction stage will give you a court order if
6  that's a preliminary injunction; but in terms of the
7  prohibition on activity, I don't see that your application is
8  going to be any different in content or extent.  So why isn't
9  continuation of the TRO, which was issued after you represented
10 to me that you had reached out, that notice of the planned
11 application and the grounds therefor had been given to Third
12 World Press.  So I am not adopting Mr. Brinckerhoff's
13 characterization of it as an *ex parte* TRO, but whatever kind of
14 TRO it is, it is in place now, and I certainly have the power
15 to continue it, and Mr. Brinckerhoff has expressly said on the
16 record that to the extent he represents Third World Press,
17 Third World Press doesn't oppose the continuation.
18             So what is the harm in continuing the TRO?
19             MR. OPPENHEIM:  Thank you, your Honor.
20             You are right.  The practical impact of these two
21 different situations is identical, and we have no problem with
22 that.  But, for us, it is really a question of being able to
23 face Third World Press at some point in time.  Third World
24 Press still technically doesn't have counsel.  Third World
25 Press still isn't talking to us about what efforts they are

1  going to take to remove the work from its Web site. Third
2  World Press continued and completed ad fundraising on the
3  Internet for this book after the court's order. Simply getting
4  a phone call that says, We are going to have a lawyer show up,
5  there wasn't enough for us to believe that there was actually a
6  party on the other side here.
7  Part of the reason we wanted to be here today is this
8  is really our first opportunity to speak with the other side
9  and have a representation made on Third World Press's behalf.
10  We are certainly just as happy practically with the existing
11  temporary relief or with the preliminary relief should it be
12  granted today. Frankly, we have no problem with that, because
13  we have accomplished what we needed to, which is getting
14  someone from Third World Press to stand up and actually listen
15  to us.
16  THE COURT: All right, then. So let's get to
17  practicalities.
18  It does seem to me that adjournment of the preliminary
19  injunction hearing aspect of this with a continuation of the
20  TRO is appropriate. I will also tell you right now that,
21  before we come back together for preliminary injunction, I will
22  need more information from X Legacy. Your application was
23  supported only by affidavit of counsel, of Mr. McMillan. The
24  assignment agreements provided are assigned and notarized by
25  the daughters, but there is no signature on behalf of X Legacy.

1  There is no documentation of the existence as a legal entity of
2  X Legacy or if it was authorized to act as X Legacy, and those
3  are concerns that I had before I heard anything from
4  Mr. Brinckerhoff's firm that I wished to raise and I was going
5  to raise with you this morning.  In any event, and I plan to
6  adjourn this hearing in contemplation of further submissions.
7  So that's one thing.
8        Since Mr. Brinckerhoff is here and is in the process
9  of being authorized, but there is more communication
10 opportunity now than there has been in the past, and it seems
11 that some serious discussions between powered representatives
12 of the sides are important to be had and to be had soon.
13       I would like to offer you the opportunity to work with
14 Magistrate Judge Pitman on this.  You may know, I am on an
15 extended trial, so my time is quite limited at this point.  So
16 I would what I would propose to do is put down a control date
17 for the preliminary injunction hearing for what's -- let's call
18 it late January in the expectation and I will also put in a
19 general pretrial reference to Judge Pitman and I will let him
20 know after this hearing that I am putting that in and he should
21 be expecting a call requesting a near term conference date.
22       But, Mr. Brinckerhoff, you are obviously going to have
23 to sort out your representation status so that the conference
24 can go forward meaningfully.  But I will make that just a
25 general pretrial management, and that obviously includes

1   settlement and includes all non-dispositive issues, including
2   discovery issues.  So you can get going both on the practical
3   discovery issues, the settlement issues, and trial management
4   issues in whatever order makes sense with Judge Pitman.
5              I will also expect that at some point in the
6   reasonably near future you are going to give me a proposed
7   schedule for the completion of the briefing of the preliminary
8   injunction motion practice.
9              So is that general framework acceptable?
10             MR. OPPENHEIM:  Absolutely, your Honor.
11             If I can just ask one clarification point, the
12  additional briefing that you would like on the preliminary
13  injunction, would you like to us hand that up to you or should
14  we be handing that up to Judge Pitman.
15             THE COURT:  I will keep the preliminary injunction.
16             MR. OPPENHEIM:  Thank you, your Honor.
17             THE COURT:  So, Ms. Ng is going to prepare an order of
18  reference.
19             Mr. Brinckerhoff.
20             MR. BRINCKERHOFF:  Two other points of clarification.
21             One, as you could tell from my presentation, it sounds
22  like it was also on the court's mind, insofar as the process
23  with Judge Pitman can be maximized to be beneficial, the sooner
24  that we can see -- and I have said this to Mr. McMillan
25  repeatedly already, and I understand that it is going to take

some time, but the sooner that we can see the documents that give X Legacy both authority and the ownership of this property, the sooner we can have meaningful discussions to try to resolve this. So to the extent that there could be a representation or even an order, whatever it is, it seems to me that's the key that allows this process to move forward. Without it, it is very difficult.

THE COURT: Mr. McMillan?

MR. McMILLAN: Your Honor, I think we should first put the cart before the horse, so to speak (sic). Once they are engaged -- or horse before the cart. Once they are engaged, I think we could have a more meaningful discussion about exchanging documents. However, given the relationship that we do have and the collegiality, I have asked for X Legacy to locate documents that they have asked in anticipation that they would be retained. I don't foresee that we would have a problem. But I think that there are a number of steps that need to take place so that we can actually try and move it forward. If seeking a settlement is what they intend to do, we are happy to oblige.

THE COURT: It certainly is important that you queue up the documentation so that, as soon as there is a clearly empowered representative, discussions can move forward. Since Third World Press apparently has been something of a fast moving target and not terribly responsive in the past until

today, X Legacy is not unreasonable in waiting to know that it is dealing with an appropriately empowered representative before beginning the information exchange and negotiating process.

So, Mr. Brinckerhoff, there is a double line under what you need to do.

MR. BRINCKERHOFF: Understood, Judge.

The last thing I wanted to just state for the record, now that we are here and authorized to speak on Third World Press's behalf, I just wanted to make it clear that as far as we know Third World Press has done nothing and certainly will do nothing going forward that would in any way be inconsistent with or violative of the TRO that we are consenting to have continued. I assure the court that it will be our and has already been our first order of business to make sure that the court's orders are fully complied with.

THE COURT: Are you representing that your client is undertaking and is in the process of removing all copies and offers for sale of this work wherever?

MR. BRINCKERHOFF: I am representing that if there is anything out there -- and as far as I have understood so far, obviously my information is not complete, there is no such thing. My understanding was that they had planned an event to announce the book to the world on November 15 at the Schomburg Center. That was cancelled as a result of the TRO. The

dbm2xlea

process with electronic online retailers and the rest had already started well before November 8, when the TRO was entered; and, as far as I know, there are no books out there actively being sold. And if there are, then -- and we are retained, and well before we are retained, just as an officer of the court, I will be explaining to Third World Press that they need to fully comply immediately as they do.

MR. McMILLAN: Your Honor, if I may, I have no reason to doubt counsel's representation to the court with respect to what he specifically said because he couched it in terms of as far as what he knows, and we know that he was just recently called two days ago. We also know that he is not even currently retained officially. So I am not sure what he knows, but what we do know is that the owner, Haki Madhubiti, of Third World Press is no stranger to this family. He is a very close intimate person that is clearly aware of all of the dynamics and the struggles and the pain and the difficulties of this family and that all of the family members are required to sign off or be a part of any exploitation of the works of Malcolm X. And, in fact, he has been part of many groups and groupings and has a very close relationship with the eldest of the Shabazzes, and yet the document that was purported to be given to us purports to have rights that we believe we will prove clearly he is aware that are not enforceable.

However, my point is that they have completely failed

1  to respond, not just to prior attempts to reach some kind of
2  understanding, they completely ignored the court order after
3  efforts and communications to tell them about it.  And so while
4  counsel may in fact be correct with his understanding, please
5  let the record reflect there has been a blatant disregard for
6  the court's order and we do intend to at least address it at
7  some point.
8        But I will just stop it there because I didn't want
9  the comments for the record to be unaddressed by the facts of
10 what is happening in this case.
11       THE COURT:  Mr. Brinckerhoff, in your counselling of
12 your client, I will trust that you will make them aware of the
13 potential for contempt proceedings and that they ought not to
14 go there.
15       MR. BRINCKERHOFF:  Your trust is well-founded, yes.
16       THE COURT:  I am going to prepare a short order that
17 continues the TRO pending resolution of the preliminary
18 injunction motion, and we will also pick an adjourned date in
19 late January in a moment.  But let me -- I can usually do two
20 things at once when I get up to three, it's a problem.  So let
21 me just pull up my form here for preparing the order.
22       I am going to put it down for a control date of
23 January 31 at 3.  As you get into your process together,
24 assuming Mr. Brinckerhoff comes on board, we can see what's
25 happening with your process with Judge Pitman.  I will expect

1    to hear from you on briefing in anticipation of the hearing of
2    the motion if that's going to be necessary, and closer to the
3    time we can figure out what amount of time is actually needed
4    and whether we need to adjust somewhat the date.  But to make
5    it clear, the continuation of the TRO will be pending
6    resolution of the preliminary injunction motion, so it is not
7    tied to the January 31 date.  So give me a moment to write this
8    up.
9             (Pause)
10            THE COURT:  This is what I have written:  "The
11   temporary restraining order entered into in this matter on
12   November 8, 2013, Docket Entry No. 4, is continued pending
13   resolution of the motion for preliminary injunction.  The
14   hearing on the preliminary injunction motion is adjourned to a
15   control date of January 31, 2014, at 3 p.m.  The parties are
16   directed to begin meeting promptly with Judge Pitman as soon as
17   an appearance is filed on behalf of defendant."
18            Does that cover what we need to cover?
19            MR. McMILLAN:  That's satisfactory, your Honor.
20            THE COURT:  Very good.  Let me just save this and get
21   it printed out.  I will give you conformed copies.
22            Since Mr. Brinckerhoff says he has not been retained,
23   so he is not fully officially appearing on behalf of the
24   defendant, you should serve a copy of this order on Third World
25   Press as well.  So there is a little footnote about service on

dbm2xlea

1  non-ECF registered parties.
2         MR. McMILLAN: Yes, your Honor.
3         THE COURT: Since the TRO itself had no stated expiry
4  date, and Third World Press is already aware of the TRO, even
5  the failure of the service does not in any way diminish Third
6  World Press's obligations under the existing order; and,
7  Mr. Brinckerhoff, I am sure that you will share that with them
8  as well.
9         MR. BRINCKERHOFF: Absolutely, your Honor.
10        THE COURT: Thank you.
11        MR. OPPENHEIM: If I can just add, your Honor, your
12 previous order had direct that service of those papers could be
13 accomplished by overnight carrier. I just want to make sure
14 that -- obviously we have more of a line of communication this
15 time, so I am less worried about service difficulties, but I
16 would appreciate the same opportunity to serve Third World
17 Press by overnight carrier.
18        THE COURT: I think that makes sense in terms of
19 prompt notice, and of course the overnight carrier service
20 provision didn't obviate the need for proper service of the
21 summons and complaint in accordance with Rule 4, I think it is,
22 and so you probably want to throw a copy of this into that
23 package as well.
24        MR. OPPENHEIM: Of course, your Honor.
25        THE COURT: I am making a conformed copy for each

1  non-ECF registered parties.

2         MR. McMILLAN: Yes, your Honor.

3         THE COURT: Since the TRO itself had no stated expiry
4  date, and Third World Press is already aware of the TRO, even
5  the failure of the service does not in any way diminish Third
6  World Press's obligations under the existing order; and,
7  Mr. Brinckerhoff, I am sure that you will share that with them
8  as well.

9         MR. BRINCKERHOFF: Absolutely, your Honor.

10        THE COURT: Thank you.

11        MR. OPPENHEIM: If I can just add, your Honor, your
12 previous order had direct that service of those papers could be
13 accomplished by overnight carrier. I just want to make sure
14 that -- obviously we have more of a line of communication this
15 time, so I am less worried about service difficulties, but I
16 would appreciate the same opportunity to serve Third World
17 Press by overnight carrier.

18        THE COURT: I think that makes sense in terms of
19 prompt notice, and of course the overnight carrier service
20 provision didn't obviate the need for proper service of the
21 summons and complaint in accordance with Rule 4, I think it is,
22 and so you probably want to throw a copy of this into that
23 package as well.

24        MR. OPPENHEIM: Of course, your Honor.

25        THE COURT: I am making a conformed copy for each

table, and we will do the same with the order of reference.  I will drop Judge Pitman a note today about the case and about the order of reference and let him know, Mr. Oppenheim, that he should be expecting to hear from your firm with respect with a request for a conference date as soon as the representation situation is in order.

   MR. OPPENHEIM:  Yes, your Honor.

   THE COURT:  I suppose, Mr. Brinckerhoff, do you think -- are you close enough that it makes sense to get a booking on Judge Pitman's calendar now in anticipation of you being in a position to be act?  I'm not sure what Judge Pitman's calendar looks like, so you may be a couple of weeks out before he can see anybody anyway.

   MR. BRINCKERHOFF:  I anticipate having this sorted out before Thanksgiving, which is a week from -- is next Thursday meaning by Monday, Tuesday, Wednesday, in that time frame, and at that point I think we could perhaps just reach out together or in whatever fashion makes sense with Judge Pitman to try to get on his calendar.

   THE COURT:  That's fine.  So I will drop Judge Pitman a note today and say that he should be expecting to hear from the parties.

   MR. OPPENHEIM:  Thank you, your Honor.

   MR. BRINCKERHOFF:  Thank you, Judge.

   MR. McMILLAN:  Thank you.

dbm2xlea

1    THE COURT:  Good seeing you all.
2    We are adjourned.
3                    - - -