```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK
```

In re:                                  :
                                            Docket #13cv7984
X LEGACY, LLC,                          :   1:13cv07984-LTS-HBP

                Plaintiff,       :

   - against -                         :   New York, New York
                                            November 8, 2013
THIRD WORLD PRESS, INC.                 :

                Defendant.       :

--------------------------------------- :

PROCEEDINGS BEFORE
HONORABLE LAURA T. SWAIN
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For Plaintiff:          MEISTER SEELIG & FEIN, LLP
                        BY:  ADAM B. OPPENHEIM, ESQ.
                             CLINTON JACKSON, ESQ.
                        2 Grand Central Tower
                        140 East 45th Street, 19th Floor
                        New York, New York  10017
                        (212) 655-3500

Transcription Service:  Carole Ludwig, *Transcription Services*
                        141 East Third Street #3E
                        New York, New York 10009
                        Phone: (212) 420-0771
                        Fax:   (212) 420-6007

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

**INDEX**

**E X A M I N A T I O N S**

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---------|--------|-------|-----------|----------|
| None | | | | |

**E X H I B I T S**

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|----|----|-----------|
| None | | | | |

```
 1                                                              
 2          HONORABLE LAURA T. SWAIN (THE COURT):  Good
 3  afternoon, please be seated. So we're here on an
 4  application for an order to show cause with temporary
 5  restraining order in the matter of X Legacy, LLC, against
 6  Third World Press, Inc., number 13cv7984.  Counsel, would
 7  you please state your appearances.
 8          MR. ADAM OPPENHEIM:  Adam Oppenheim from Meister
 9  Seelig & Fein, on behalf of plaintiff, X Legacy, LLC.
10          THE COURT:  Good afternoon, Mr. Oppenheim.  And
11  who is with you here?
12          MR. OPPENHEIM:  This is my associate, Clinton,
13  please introduce yourself.
14          MR. CLINTON JACKSON:  Clinton Jackson of Meister
15  Seelig & Fein.
16          THE COURT:  Good afternoon, Mr. Jackson.
17          MR. JACKSON:  Good afternoon.
18          THE COURT:  Now, has counsel for the defendant
19  been informed of this TRO application?
20          MR. OPPENHEIM:  Yes, they have, Your Honor.  We
21  have informed counsel, both by phone where we left a voice
22  message, and emails which we sent to them indicating that
23  we were coming here today, this afternoon to file this.
24  Our intention to file the papers you have before you has
25  also been made clear over the course of the last few weeks
```

in a series of emails and correspondence to the other side, both in the form of a cease and desist letter and simply in letters asking them to come to the table to talk to us, all of which are attached to the papers before the Court at this time.

THE COURT: And would you tell me precisely what information you provided to counsel for the defendant regarding this TRO application and when you provided it?

MR. OPPENHEIM: Yes, certainly, Your Honor. With respect to the facts underlying the TRO, that is with respect to what we've asserted in these papers, that the property they are seeking to exploit is ours, and ours alone. That has been the subject of numerous emails sent beginning on October 23rd, which was just a few days after we first learned of the impending publication of the works which we believe is going to happen next week.

The first time we informed them that we intended to file today's TRO was earlier today.

THE COURT: How much earlier today?

MR. OPPENHEIM: About four hours ago, Your Honor.

THE COURT: And so you're representing that you reached out by telephoned and email four hours ago?

MR. OPPENHEIM: Yes, that's correct.

THE COURT: And what was the substance of your

```
 1  message?
 2          MR. OPPENHEIM:  We indicated that we would be
 3  filing the complaint and seeking preliminary relief before
 4  the Court this evening based upon their representation that
 5  the book would be released early next week.
 6          THE COURT:  And did you specifically say that you
 7  would be seeking a temporary restraining order?
 8          MR. OPPENHEIM:  Yes, we did, Your Honor.
 9          THE COURT:  Restraining publication of the work?
10          MR. OPPENHEIM:  Yes, we did.
11          THE COURT:  Who, who represents the defendant,
12  Third World Legacy?
13          MR. OPPENHEIM:  At this time they have not
14  indicated that they have counsel and we have spoken to a
15  number of representatives at the company, one of whom is an
16  individual named Mr. Bennett Johnson who we understood was
17  the business manager.  Mr. Johnson did not, however,
18  provide an answer to our initial request of whether or not
19  they would continue with publication and this was a
20  conversation that happened a few weeks ago.  We also spoke,
21  I'm sorry, I don't want to butcher the name, I believe it's
22  Mr. Mudabati (phonetic) --
23          MR. JACKSON: Madhubuti.
24          MR. OPPENHEIM:  Madhubuti, I'm sorry, Your Honor,
```

who was referred to us by Bennett Johnson and he also did not, promised is a response and never gave us one. So when we reached out to him today, we told him that we had no choice by to seek the restraining order.

THE COURT: Now this Mr. Madhubuti, can you spell that name for the record?

MR. OPPENHEIM: I can do my best, can you help me out here, I think it's --

MR. JACKSON: It's M, as in mother, A-D -- M-A-H-D-U-B-U-T-I.

THE COURT: Okay, M-A-H-D-U-B-T-I?

MR. JACKSON: B-U --

MR. OPPENHEIM: It actually appears, Your Honor, in paragraph 10 of the declaration accompanying our order to show cause, and there it is spelled M-A-D-H-U-B-U-T-I.

THE COURT: Okay, and so is this the same person who purportedly wrote the forward of this book?

MR. OPPENHEIM: Yes. Yes, it is, Your Honor.

THE COURT: Because I see that name on the cover of the book. I thought I understood you a minute ago to say that you had informed both the entity and its counsel, did mishear you?

MR. OPPENHEIM: Yes, I'm sorry, Your Honor. As I said earlier, we don't believe that they have counsel at

this time. We were actually, that was our first question back on the 23rd, they have never told us they were represented by counsel and we have had, we have attempted to have a number of discussions with both Mr. Johnson and Mr. Madhubuti about the release of this book and they have not directed us to counsel at any time.

THE COURT: Your proposed order to show cause with temporary restraining order calls for service on the defendant, on TWP or its counsel by hand delivery or prepaid overnight courier. And you say to TWP's principal business address.

MR. OPPENHEIM: Yes.

THE COURT: Is, what is its principal business address?

MR. OPPENHEIM: This is alleged in the complaint upon information and belief, and it's also information that was defined from their website, principal business address, it's 7822 South Dobson Avenue in Chicago, Illinois.

THE COURT: And the numbers that you've been using to speak to Messrs. or attempt to speak to Messrs. Johnson and Madhubuti, are those Chicago numbers? I'm trying to figure out how meaningful and effective the communications have been thus far for purposes of the, whether this is an ex parte TRO application effectively or not. And also for

```
 1
 2  purposes of service.  So that's the point of the questions,
 3  I may not be asking exactly the right questions, but if you
 4  can respond to the substance of that inquiry.
 5          MR. OPPENHEIM:  I understand, Your Honor.  The
 6  numbers that we have for them are, in fact, Chicago
 7  numbers, and I'm sorry to say that I, the frustration we
 8  have felt in getting in touch with Third World Press is
 9  unfortunately something I guess I'm passing onto the Court.
10  We have been able to get people on the phone and we sent
11  countless emails, each one of which is attached to our
12  papers, we just simply don't get calls back.  Now we know
13  the number we have is good, we know we were reaching out to
14  Third World Press, and we have had communications with
15  employees of Third World Press, but what we are not getting
16  is anyone responsive to either our cease and desist or our
17  instructions to join issue with us on this.  We're just not
18  getting anything back from them and we were very specific
19  today when we spoke to them and explaining that because of
20  that we had no choice but to seek preliminary relief
21  because the book is supposed to come out in just a few
22  days.
23          THE COURT:  And did you tell them where you were
24  coming to make this application?
25          MR. OPPENHEIM:  Yes, we did, Your Honor.
```

```
 1
 2         THE COURT:  What precisely did you tell them?
 3         MR. OPPENHEIM:  We said the Southern District, at
 4  the time we didn't know what judge we'd be assigned. So we
 5  indicated this court.
 6         THE COURT:  What's the basis for believing that
 7  this Court has personal jurisdiction?
 8         MR. OPPENHEIM:  The publication company has
 9  already started distributing the unauthorized book in New
10  York, we actually obtained a copy of it, we also believe
11  that they improperly obtained a copy of the diary pages
12  they are seeking to publish from the Schomburg Center of
13  the New York Public Library in upper Manhattan.  Because
14  the torts that the defendant has committed would affect New
15  York and because we believe some of those torts may in fact
16  have been, some of that tortuous conduct may have been
17  committed in New York, and because this is a publishing
18  company that regularly does business in New York, we
19  believe this Court has personal jurisdiction over the
20  defendant.
21         THE COURT:  And so as you can imagine, I only had
22  a limited opportunity to review the papers so this
23  advanced, uncorrected copy is, that's depicted in your
24  Exhibit H, and that's referred to in the complaint, is a
25  work that was purportedly prepared by the defendant entity,
```

2  it's not that the estate, that X Legacy had prepared the

3  book and sent it out for review?

4           MR. OPPENHEIM:  No.  No, Your Honor, not at all.

5  In fact, one of the complicating factors here for us

6  personally, I don't think this is before the Court, but X

7  Legacy is planning and has always been planning to release

8  <u>The Diaries of Malcolm X</u> on or about the 50th anniversary of

9  his assassination.  Because the book isn't quite done yet

10 we hadn't raced to register the copyright. We have now done

11 so upon finding out that someone else entirely was

12 improperly trying to publish and profit from those same

13 pages of the same diary.  That property all belongs to X

14 Legacy which is the Legacy LLC set up by the heirs of

15 Malcolm X precisely to protect this intellectual property

16 and other property of the estate of Malcolm X and Betty

17 Shabazz from exploitation by anyone else.

18          THE COURT:  And in your, in the affidavit and I

19 think in the complaint there is a representation that the

20 Shabazz daughters have assigned their rights to X Legacy,

21 is it your representation that those individuals are the

22 only individuals who would have had rights in the diaries

23 or --

24          MR. OPPENHEIM:  Yes, yes, it is, Your Honor, that

25 is entirely my understanding, that is entirely consistent

2  with what my understanding has been to date is that they
3  are the only ones who hold this and they assigned whatever
4  they had inherited from the estate to this LLC precisely to
5  prevent the unilateral decision by anyone who got a copy of
6  something and thought they had a right to publish it.
7  That's why the LLC was created and that's why it held this
8  material.
9           THE COURT:  And it's also your representation that
10 this Third World Press has no rights in the diaries from X
11 Legacy or anybody else?
12          MR. OPPENHEIM:  They do not have any rights from X
13 Legacy, they have, there are representations on their
14 website that we're confused by, and it's something we're
15 hoping to get to the bottom of, but X Legacy is the holder
16 of these rights and X Legacy has never given permission to
17 anyone else. So it's not entirely clear to us what the
18 source of Third World Press's assertion of the right to
19 publish this material comes from. And, of course, that's
20 precisely the question we've been asking of them for the
21 last two or three weeks.
22          THE COURT:  And what is the nature of the
23 representation on their website?
24          MR. OPPENHEIM:  The representation indicates that
25 something like together with the children of Malcolm X,

who, of course, are the members of X Legacy, that they have been given the right to publish this material. And, of course, we have the assignment because we represent X Legacy, showing that the children, in fact, assigned their interest to the LLC. And so we do not know what the basis for that representation is.

If there is an agreement with, with Third World Press, we would certainly take the position that that agreement is void because it would be a promise to give away something that whoever promised didn't have, because that property has always been explicitly the property of X Legacy.

THE COURT: Now that I've asked you all sorts of specific questions, would you make your application in summary form with your factual and legal basis for the record?

MR. OPPENHEIM: Absolutely, Your Honor. And my apologies if any of this is redundant in our discussions to date. But I think you've probably already heard most of what matters here. X Legacy, LLC, was set up, as I indicated earlier, to protect the property of the Estate of Malcolm X and his wife. To create X Legacy, LLC, one of the steps that was taken was the children of Malcolm X established the LLC, and assigned their rights into

anything that came out of the estate. And so it mentions in that assignment as you'll see, writings, photographs, anything that belonged to the estate did now sort of come into these hands.

What X Legacy did with that material was to give it on a very confidential basis to the Schomburg Center of the New York Public Library, where it was to some extent able to be reviewed by scholars, but not photocopied or distributed at any time. And at around that time, X Legacy began developing a plan for what they saw as the best possible way to exploit and disseminate these works to the world. Their plan was that these were things that would be released upon the 50th anniversary of Malcolm X's assassination.

Only a few weeks ago they heard that somebody else in Chicago had copies of the diary somehow and was planning on releasing them. Because these diaries had never been outside of the control of either the family or the Schomburg Center, they immediately took steps to contact Third World Press which began an internet based fundraising campaign to support the publication of these works. And we obtained a copy of the advanced copy that you see photocopied in the exhibits, and attempted to try actually to just work this out. To say, you know, everyone here

wants these diaries published, but you don't have the right to do that and we have a very good idea of how we would like to do that.

The members of X Legacy, LLC, have always had a very carefully thought out plan for how best to present these materials to the world. I think the parties all recognize the importance of these works. I don't think anyone at Third World Press really has a different opinion on the importance of what's out there, but the fact of the matter is they were not anyone's to give away and Third World Press is taking advantage of the family of Malcolm X's right to release these materials as they see fit, saw fit, and they have a good idea about how they'd like to do that.

So beginning on about October 23rd, as I had mentioned, we attempted to reach Third World Press to ask them to stop the publication of the book, to at least work out a way that maybe the parties could work together to find an agreeable way to distribute these works, that at least took into consideration the plans of the people who, in fact, held the rights to publish them, but we didn't get anything. We got no responses, we got some run around, some people said call Bennett, some people said call Dr. Madhubuti, and it was very frustrating and when we finally

made it clear that we were going to seek the relief of the Court, we stopped getting any response to either voice messages or to emails. Again, all of the email correspondence we've sent was attached to our papers.

To turn to the legal basis for our motion before the Court, I think the irreparable harm element, although it is usually listed second, is rather obvious in this instance. The ability to release the so far unpublished writings of Malcolm X can only happen once. Once these diaries are out to the world, the ability, not only to market them successfully, but to present them in the way that the holders of the copyrights intended, is lost. This is a classic example where somebody is basically stealing our book out from underneath our feet. And I think the damages here have very little to do with the financial gain sought by the company -- sorry, sought by the LLC, but rather everything to do with their right to choose the manner in which the diaries of Malcolm X are presented to the world.

X Legacy is the only entity with the right to do that as it should be, it's the children of Malcolm X, you are choosing together how to present these works to the world, that shouldn't be taken away from them. If it is taken away from them there is almost no way they can get

the toothpaste back in the tube, the children of Malcolm X will never be able to choose again how it is to present to the world these very special diaries.

As far as likelihood of success on the merits goes, as I indicated earlier, the X Legacy, LLC, has immediately and as quickly as possible, applied for registration and pre-registration of both the underlying diaries as well as the unpublished book that the children of Malcolm X would release containing the diaries in a few years. That is tentatively titled <u>The Diaries of Malcolm X</u>. We have rushed to establish that although normally the pre-registration process is not evidence of the ownership of the copyright, it is sufficient at this stage to allow us to bring the underlying claims and to seek this immediate relief from the Court. And for that reason I think that, and I do want to stress again the immediacy and irreparable nature of the harm at issue here, I think the only safe route is to at least put the breaks on this infringing activity until at worst the facts can be sorted out appropriately. I think we've presented material to the Court which establishes that we do hold the copyright to these works and that no one else does. And at the very least, to allow a hearing on that to determine how this comes out, because if we don't, this book comes out on

```
 1
 2  Tuesday, and the story is over.  We can be aggrieved, we
 3  can sue, we can do whatever we want, but we will never
 4  again have the opportunity to choose how these works are
 5  presented to the world. That will be gone early next week
 6  is our understanding.
 7           THE COURT:  Thank you.  Would you be seated for a
 8  moment and I'll reflect on this.
 9           MR. OPPENHEIM:  Sure.
10           THE COURT:  I find, based on the papers submitted
11  and the representation of counsel, that the likelihood of
12  success on the merits and balance of hardship in favor of
13  plaintiff has been shown sufficient to warrant the issuance
14  of the order to show cause, including the temporary
15  restraining order and that the requisite risk of
16  irreparable harm in the absence of temporary relief has
17  been established based on the representations that this is
18  a heretofore unpublished work and that the plaintiff has
19  exclusive rights in the work and has also sufficiently
20  commenced the copyright registration process to support
21  enforcement of the copyright through litigation.
22           I have marked up the proposed order to refer in
23  the first paragraph, in addition to the representation of
24  Adam B. Oppenheim, Esq., that he provided advance oral
25  notice of this application for an order to show cause and
```

...

```
```

18

TRO to representatives of defendant. I have set this show cause hearing for two weeks from today, that is November 22nd at nine in the morning in this courthouse. I am initialing the TRO paragraph. I am requiring the posting of security in the amount of $5,000 to be posted by next Wednesday, the 13th of November, and ordering that responsive papers be filed with the Court and served upon plaintiff's counsel by, with a courtesy copy delivered to the Court per chambers, by three o'clock on the 18th of November, which is a week Monday with reply papers to be served and filed by three o'clock on November 20th, which is a week from next Wednesday. And I am requiring service by nine in the morning on Tuesday, the 12th of November, and I have indicated that I have issued this order at 5:10 p.m. on today, November 8th.

So my law clerk will make a Xerox copy of the order and give it you and you will, we will file the order, you will have to file the supporting papers and you can use the copy for service.

MR. OPPENHEIM: Okay, great.

THE COURT: Are there any questions?

MR. OPPENHEIM: No, thank you very much, Your Honor, I appreciate your attention to this and late on a Friday on a holiday weekend. I appreciate it very much.

```
 1                                                          19
 2           MR. JACKSON:  Thank you, Your Honor.
 3           THE COURT:  Thank you.
 4                (Whereupon the matter is adjourned.)
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                                                      20
 2                    C E R T I F I C A T E
 3

 4         I, Carole Ludwig, certify that the foregoing
 5  transcript of proceedings in the United States District
 6  Court, Southern District of New York, X Legacy, LLC versus
 7  Third World Press, Inc., Docket #13cv7984, was prepared
 8  using digital electronic transcription equipment and is a
 9  true and accurate record of the proceedings.
10
11
12
13
14  Signature_____
15
16  Date:   December 17, 2013
```